

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00164-CV

MARY GUERRA AND TONY GUERRA, APPELLANTS

V.

UNITED SUPERMARKETS, L.L.C., APPELLEE

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 10-12-22388, Honorable Pat Phelan, Presiding

August 23, 2013

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

In this case, Mary Guerra and her husband Tony Guerra allege on December 5, 2008, while shopping at a supermarket owned by appellee United Supermarkets, L.L.C., Mary was injured in an altercation between United employees and a fleeing shoplifting suspect. Tony Guerra alleges a claim for loss of spousal consortium. United filed traditional and no-evidence motions for summary judgment and the trial court rendered a summary judgment decreeing the Guerras take nothing from United. The judgment

does not specify the ground on which the court relied. We will reverse and remand the summary judgment as to Mary Guerra and otherwise affirm the trial court's judgment.

Background

As this is the review of a summary judgment, we will recite the facts presented by the summary judgment evidence in the light most favorable to the Guerras, indulging every reasonable inference in their favor.[1]

In a report of the occurrence, a United manager recounted:

Around 3:00 the deli called me over and told me that the gentleman at the counter had been coming in·and·ordering·large quantities of various items. The day before he was in around noon, they were 99% sure he did not pay for anything. I then started watching the guy but he was watching me more than I was watching him. I then told Jesse Lopez to watch him. He was roaming around the first three aisles waiting to get a clear run at the door. I then went and stood at the east doors. A few minutes later he turned the corner with the food in hand. I grabbed him and he was resisting. Jesse than (sic) help (sic) me try to secure him. He appeared to give up. As we lead him to the office he started running to the west doors. As he approached the doors he pushed his way through an elderly couple. The doors would not open because the doors were off, they were being cleaned. I then grabbed him into a bear hug and he (sic) was still unable to control him. Jesse was there in a matter of seconds and we both were unable to control him because he was still fighting back. A couple of guests were starting to help, then he gave up. The elderly woman was hurt during the scuffle.

Four video recordings from store security cameras are generally consistent with the facts recounted by the manager in his statement. The initial video depicts the shoplifting suspect approaching an exit where a United employee waits. The employee and the suspect briefly engage in a physical altercation before the suspect relents and the two walk off-camera with the employee's hands on the suspect. A second and third

---

[1] *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 756 (Tex. 2007) (per curiam) (stating rule).

video depict figures running through the store. The end of the third video shows the suspect in store custody. The fourth video covers the suspect's attempt to leave the store after escaping the custody of store personnel. Mrs. Guerra can be seen approaching the exit behind the suspect. At the door, a store employee dives for the feet of the suspect, as if to tackle him, and arises as a melee breaks out among the suspect and two United employees. Mrs. Guerra moves to the right behind a display but the altercation moves there as well. She emerges from behind the display and moves to the right of the camera. Meanwhile the United employees continue scuffling with the suspect at the display until, after a third United employee appears, the subdued suspect is led off-camera. At that time Mrs. Guerra appears on camera again. She rests one hand on a wall until she reaches Mr. Guerra who places his arm around her shoulder.

Describing the incident in his deposition, Mr. Guerra recalled, "Well, I heard this stampede and I turned around, and here are three guys coming. In the middle the— there was one guy hanging on each side of guy (sic) that was following, and when we— when he got to us, he swerved, and he fell right in front, all three of them."

A police report states that according to the United store manager an elderly woman was injured while the store detained a suspected shoplifter. The woman was identified as Mary Guerra. According to the report she was transported to the emergency room by ambulance "to treat injuries she received during the incident." Another police record states that the shoplifting suspect was arrested on charges of injury to an elderly person, assault, and theft under $50.

3

Medical records from 2009 include a patient history of Mary Guerra. It describes a 1987 L5-S1 fusion which improved her then-existing back pain symptoms "and she had no pain until 2 months ago." According to the narrative, Mrs. Guerra was at a supermarket and was "incidentally pushed" while a shoplifter was pursued. "After the incident she was unable to walk and she had to be carried to a chair. She was taken by an ambulance to the ER and Xrays (sic) were taken. Her pain continued and she used some 'pain pills' which improved her pain some and eventually she underwent an MRI. The MRI showed a spondylolisthesis and neurosurgical consultation was requested." A document entitled "Questions Under Oath for Medical Provider" bears the signature of a physician and is dated May 18, 2009. The physician was asked, "Was the incident of December 5, 2008 the cause of Ms. Mary Guerra's back injuries for which you treated and are presently treating the patient?" The physician responded, "No. It caused symptoms from a pre-existing condition." The physician was also asked, "With respect to your care for this patient, is Ms. Mary Guerra considered a surgical candidate for the back injuries sustained in the incident of December 5, 2008?" He responded, "Currently assessing that issue. Her spinal condition should be treated surgically but her other health issues are severe."

Applicable Law

An appellate court reviews a trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper if the record presents no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Knott,* 128 S.W.3d at 215-16.

4

When reviewing a summary judgment, a court takes as true all evidence favorable to the nonmovant, and indulges every reasonable inference and resolves any doubt in favor of the nonmovant. *Valence Operating Co.,* 164 S.W.3d at 661; *Knott,* 128 S.W.3d at 215. If the trial court did not specify a basis for granting summary judgment, the judgment will be affirmed if any ground asserted in the motion has merit. *Star-Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex. 1995).

On a traditional motion for summary judgment, the movant bears the initial burden of conclusively negating at least one essential element of a claim or defense on which the non-movant has the burden of proof. Tex. R. Civ. P. 166a(c); *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997). Only if the movant satisfies this burden does the burden shift to the nonmovant to produce evidence demonstrating a genuine issue of material fact as to the challenged element or elements in order to defeat the summary judgment. *See Walker v. Harris,* 924 S.W.2d 375, 377 (Tex. 1996).

A party moving for summary judgment on an affirmative defense bears the burden of conclusively proving all elements of the defense. *Integrated of Amarillo, Inc. v. Pinkston-Hollar Constr. Servs.,* No. 07-11-0422-CV, 2013 Tex. App. Lexis 4216, at *5 (Tex.App.--Amarillo Apr. 2, 2013, pet. filed) (mem. op.) (citing *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999)).

Through a no-evidence motion for summary judgment, a movant may challenge the existence of legally sufficient evidence of one or more essential elements of a claim or defense on which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P.

5

166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese,* 148 S.W.3d 94, 99 (Tex. 2004). The nonmovant in response must present summary judgment evidence demonstrating a genuine issue of material fact concerning the element or elements challenged. Tex. R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004).

Issues

United's summary judgment motion was a hybrid motion, containing paragraphs presenting both traditional and no-evidence grounds. Appended to the motion were five exhibits, consisting of copies of the Guerras' original petition, Mary Guerra's deposition, the video from United's store surveillance cameras, an affidavit of a United employee and Tony Guerra's deposition. In the motion, United discussed its summary judgment evidence, in connection both with its no-evidence grounds and its traditional grounds. Attached to the Guerras' response were a report by a United employee of the December 5 incident, police records pertaining to the incident, and medical records and data.

Although not presented as a *Malooly* point,[2] we understand the Guerras' appellate issues one through three as challenging the summary judgment grounds United urged in the trial court. *See* Tex. R. App. P. 38.9 (addressing substantial compliance with appellate rule 38).

---

[2] *See Malooly Bros, Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex. 1970) (point of error on appeal stating simply that trial court erred by granting summary judgment "allows argument as to all the possible grounds upon which summary judgment should have been denied").

For its no-evidence ground, United asserted the Guerras could produce "no evidence that [United] caused either of the Plaintiffs any injury."

As a threshold matter, the parties disagree over the standard by which the case is governed. United asserts the case arises under the law of premises liability. *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 99 (Tex. 2000) (citing *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex. 1983) (listing essential elements of a premises liability claim when, for example, the plaintiff is an invitee)). The Guerras maintain it sounds in ordinary negligence. *See D. Houston, Inc. v. Love,* 92 S.W.3d 450, 454 (Tex. 2002) (listing elements). We need not address their disagreement because recovery under either standard requires a plaintiff to prove the defendant's breach of duty proximately caused the plaintiff's injury. *See Western Invs., Inc. v. Urena,* 162 S.W.3d 547, 550-552 (Tex. 2005) (jointly analyzing causation element of premises liability and negligence claims and finding no evidence that alleged breach of duty was a substantial factor in causing injury).

Determination of causation ordinarily is for the trier of fact. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 314 (Tex. 1987) (determination of proximate cause and intervening cause rests with the jury); *Tex. Dep't of Transp. v. Pate,* 170 S.W.3d 840, 848 (Tex.App.--Texarkana 2005, pet. denied) ("Whether a particular act of negligence is a cause-in-fact of an injury is a particularly apt question for jury determination"). And the plaintiff must establish through sufficient proof the relationship between the event sued upon and the injuries complained of. *Guevara v. Ferrer,* 247 S.W.3d 662, 666 (Tex. 2007).

Elaborating on its no-evidence ground, and referring to the video evidence appended to its motion, United's motion asserted that the "video clearly shows that Ms. Guerra was not struck by either a shoplifter or any United employee," and asserted it "also shows that Ms. Guerra was not knocked into the wall." The motion concluded, "Ms. Guerra is unable to prove that she sustained any injury because of the incident at United. The video surveillance shows that she was not struck by the shoplifter or the United employee. Ms. Guerra has failed to demonstrate that United in any way caused her injury."

Viewing the summary judgment record in the light most favorable to the Guerras, and taking as true evidence in their favor, *Goodyear Tire & Rubber Co.,* 236 S.W.3d at 756, we cannot agree the summary judgment record contains no evidence that "United in any way caused [Mrs. Guerra's] injury." In her deposition, Mrs. Guerra testified:

Q: Okay. Did you fall down?

A: I don't think so. Like I said, I just hit against the wall, kind of where I was thrown against the wall.

Q: You didn't fall?

A: No, no.

* * *

Q: Okay. And tell me what's happening next.

A: Well, we were walking out.

Q: Who--

A: We were walking out.

Q: --is "we"?

A: Me and my husband.

Q: That's Tony?

8

A: Yes, ma'am.

Q: Okay.

A: And we were just walking out, and all of a sudden, I just--I just felt this big--I mean, it just--my back, I mean, it just--something--like something had just--like a truck hit me. I mean, it just really hurt me bad, and it kind of knocked me off balance, and it kind of threw me against the wall. I didn't see anybody. I didn't see nothing. I just felt it, and it kind of--kind of made me dizzy. Kind of made me--didn't even know what to do, what to think. I didn't think--I didn't even think for a minute, for a while there.

Q: Okay. Tell me on that day: Had you had any hydrocodone?

A: I might have had that morning. Like I say, that's what I do first thing in the morning.

Q: Okay. This incident occurred at 3:15 p.m. How many hydrocodone do you think you would have had by 3:15 p.m.?

A: Well, maybe a couple, maybe.

Q: Okay. I want to--I'm--I want to get your description of what happened. You're walking out of the store. Where were you exactly?

A: Well, right there at the entry of the--the store right there in the door, just a little ways before.

Q: Does that store have automatic doors?

A: Yes, ma'am.

Q: Okay. Were you by those automatic doors?

A: No. We still lack a bit, like, from here to the--to that window. I mean, it was--a little ways from-- and they were coming. They--I mean, it just hit me and--

Q: What hit you?

A: I beg your pardon?

Q: What hit you?

A: I really don't know. I really don't know. I didn't see--like I said, I didn't see anything. All I know is that I had a real big hard hit on my back. I mean, it just hit me real hard on my back. I didn't know what had hit--what had hit me. I don't know who it was or--or how many there were or nothing or if they all hit me. I don't know. I couldn't tell you because I didn't see anything.

9

Q: Okay. So they hit you from behind?

A: Right.

Q: Okay. Did they knock you into something?

A: Against a wall--towards the wall.

Q: Okay. But you don't know if it was one person or more than one person?

A: I couldn't tell you.

United's motion asserted Mrs. Guerra's testimony is not supported by the video evidence. But issues of witness credibility, the weight assigned their testimony, and the resolution of conflicts in the evidence are for the trier of fact following a conventional trial on the merits. *Matlock Place Apts., L.P. v. Druce,* 369 S.W.3d 355, 375 (Tex.App.--Fort Worth 2012, pet. denied) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 827 (Tex. 2005)).

United's assertion the video record is conclusive on the issue of causation might more properly be considered as presenting a traditional summary judgment ground. Whether considered as a no-evidence or traditional ground, however, it must fail. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970) (reiterating that summary judgment requires proof that establishes as a matter of law there is no genuine issue of fact).

The summary judgment in United's favor as to Mary Guerra cannot be sustained on the no-evidence ground its motion asserted.

Affirmative Defense of Superseding Cause

In the part of its motion presenting its traditional grounds, United asserted the alleged criminal conduct of the suspected shoplifter was a superseding intervening cause relieving it of any liability. The criminal conduct of a third party is ordinarily a superseding cause of damage unless the criminal conduct is a foreseeable consequence of the defendant's actions. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 550 (Tex. 1985); *Phan Son Van v. Pena,* 990 S.W.2d 751, 754 (Tex. 1999). Foreseeability means the actor should anticipate the dangers a person of ordinary intelligence would anticipate. *Nixon,* 690 S.W.2d at 549-50.

A defendant seeking summary judgment on the ground the defendant negated foreseeability as an element of proximate cause must prove more than simply the occurrence of intervening third-party criminal conduct. *Phan Son Van,* 990 S.W.2d at 754. The defendant has the burden to prove that the criminal conduct was not foreseeable, because to be a superseding cause of injury, "the intervening force must not be ordinarily or reasonably foreseeable." *Id.* (citations omitted). For such a determination, the following considerations may be pertinent:

> (a) the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;
>
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

11

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him; [and]

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id.*; *see also Palacio v. AON Properties, Inc.,* 110 S.W.3d 493, 499 (Tex.App.--Waco 2003, no pet.). United's summary judgment evidence was to the effect that, except for the Guerras, "there have been no employee or customer accidents and/or injuries that have occurred because of a shoplifter attempting to avoid apprehension at the United store in Levelland." But the other evidence we have noted shows that United's employees forcibly detained this suspected shoplifter as he attempted to leave the store, and when he escaped their custody and ran, employees gave chase in the presence of other customers. The Guerras approached the exit at about the same moment. Mrs. Guerra was caught in the ensuing altercation among store employees and the suspect and claims injuries. After applying the considerations discussed in *Phan Son Van,* 990 S.W.2d at 754, we find the summary judgment evidence raises a fact issue whether the suspect's conduct and the resulting risks to customers like Mrs. Guerra were ordinarily or reasonably foreseeable. Thus, on this record, whether the criminal conduct of the shoplifting suspect was a superseding intervening force breaking the causal nexus between any negligence of United and any resulting injury to Mrs. Guerra is a question of material fact.

Having thus concluded the summary judgment cannot be sustained on the basis of the affirmative defense raised by United, we find the trial court erred in rendering summary judgment that Mrs. Guerra take nothing from United.

Loss of Consortium Claim of Mr. Guerra

In its traditional motion for summary judgment United urged "Mr. Guerra has readily admitted that he did not suffer any injury because of the incident at United and that his relationship with his wife has not changed since December 5, 2008." The claim of a spouse for loss of consortium is derivative in nature requiring proof the other spouse suffered serious, permanent, and disabling injuries. *See Dunn v. Bank-Tec South,* 134 S.W.3d 315, 325 (Tex.App.--Amarillo 2003, no pet.) (citing *Browning Ferris Indus., Inc. v. Lieck,* 881 S.W.2d 288, 294 (Tex. 1994)). The existence of a spouse's injuries must be linked to the diminished or missing affection, solace, companionship, society, assistance, and sexual relations contemplated within the theory of consortium. *See id.* (citing *Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 328 (Tex. 1993)).

As proof, United directs us to the following excerpt from Mr. Guerra's deposition:

Q. [United's attorney]: Well, do you—do you claim that United has injured you in any way—

A. [Mr. Guerra]: Not me. Not me.

Q. Okay.

A. Maybe her, not me.

Q. Well, has this incident at United changed your relationship with your wife in any way?

A. Gosh, no.

Q. Does she love you any less than she did?

A. Well, of course she loves me less. She is too old.

Q. Well, I'm talking about—she loves you and takes care of you?

A. Yeah. We are the same, yes, as we was.

Q. So that relationship hasn't changed?

13

A.   No.

Q.   You still have lots of companionship?

A.   Yeah.

Q.   Okay.

A.   I guess so.

Q.   And she helps take care of you?

A.   Yes.

Q.   And you help take care of her?

A.   Of course, if I can.

Q.   And you both provide for each other emotional support?

A.   That's right.

Q.   And so on the day before the incident and now, is there any difference in your relationship with your wife?

A.   Not—not between us, no.

A brief line of questions by Mr. Guerra's counsel followed.  Mr. Guerra seemed to indicate he and Mrs. Guerra were not as sexually intimate after the accident as before. But the deposition concluded with the following exchange:

Q. [Mr. Guerra's counsel]:  So you're saying that after the accident, there is less intimate moments than there were before?

A.   Well, it's the same.  It's the same.

Without deciding, however, whether this testimony constitutes conclusive proof on the ground asserted, we read United's no-evidence motion as also challenging Mr. Guerra's loss of consortium claim.  Therein, United alleges, "Specifically, the Plaintiffs have produced no evidence that Defendant United caused either of the Plaintiffs any injury."  When a party moves for summary judgment on both traditional and no-evidence grounds, we first consider the no-evidence grounds.  *Merriman v. XTO Energy, Inc.,* No.

14

11-04942013, Tex. Lexis 492, at *6 (Tex. 2013) (citing *Ridgway,* 135 S.W.3d at 600).  If the nonmovant fails to produce more than a scintilla of evidence, we do not consider whether the movant's proof offered in support of its traditional motion is conclusive. *Ridgway,* 135 S.W.3d at 600.

Here, the only summary judgment evidence concerning a causal nexus between Mrs. Guerra's injury and any loss by Mr. Guerra is the testimony included in his deposition excerpt.  Mr. Guerra's testimony gives rise to no more than a surmise or speculation linking his wife's injury with any diminished or missing affection, solace, companionship, society, assistance, and sexual relations.  In legal effect, this amounts to no evidence.  *Seideneck v. Cal Bayreuther Assocs.,* 451 S.W.2d 752, 755 (Tex. 1970).  In the absence of any evidence by Mr. Guerra of an element of his loss of consortium claim, the trial court did not err in rendering summary judgment that he take nothing.

## Conclusion

We affirm that portion of the trial court's summary judgment decreeing that Tony Guerra take nothing from United on his claim for loss of spousal consortium.  We reverse that portion of the trial court's order granting summary judgment in favor of United on the claim of Mary Guerra and remand the case for further proceedings consistent with this opinion.

James T. Campbell
Justice

15